### William H. Haggerty, executor,

*v.*

### Euphemia Lanterman and others.

A testator, after directing all his debts to be paid, gave to each of his six children an equal share of all of his estate, the shares of his two daughters to be invested for their use during life, with remainder to their respective heirs. After appointing his son W. his sole executor, he concluded as follows : " My will and wish is to consult the heirs whether it will be best to sell it or otherwise—the homestead property."—*Held*, that a power of sale of the real estate vested in the executor, from his duty to divide the estate and invest the daughters' shares, and also from the condition of the estate, there being insufficient personalty to pay the debts, and the sons being unable to pay their debts to the testator except from their several shares of the realty.—*Held*, also, that the executor's power of sale over the homestead is not dependent upon obtaining the consent of all the heirs.

<br>

Bill for construction of will. On final hearing on pleadings and proofs.

*Mr. L. Cochran,* for complainant.

*Mr. G. M. Shipman,* for Mrs. Lanterman.

The Chancellor.

The question presented for adjudication is, whether, under the provisions of the will of Aaron Haggerty, deceased, the executor has power to sell the real estate of which the testator died seized. By the will, the testator,

after directing that his debts and funeral expenses be paid, gives a legacy to his wife; then gives to his four sons each an equal share of "all" his "estate;" then gives to his daughter Emeline the interest of her equal share of his "property" during her life, and afterwards "to go to her heirs, if she has any, and if not, to her brothers and sisters"; then gives to his daughter Almira "an equal share with his sons"; and then gives to his daughter Euphemia "an equal share with the rest; to have the interest of it during her life-time; if she has heirs, to go to them; if she has none, to go to her brothers and sisters." The will concludes as follows:

"I appoint my beloved and trusty son, William H. Haggerty, my sole executor of this my last will and testament. My will and wish is to consult the heirs whether it will be best to sell it or otherwise—the homestead property."

The scheme of the will is an equal division, among his children, of the testator's entire estate, real and personal, after paying the legacy to his widow; his daughters, however, to have only the interest of their respective shares for life. This scheme not only contemplates a division of all the property, but also the investment of the shares of the daughters, which involves a conversion of the real property into cash. To make the division and the investment are part of the duties of the executor. *Jones's ex'r* v. *Stiles*, 4 *C. E. Gr.* 324; *Parker's ex'r* v. *Moore*, 10 *C. E. Gr.* 228; *South* v. *Allen*, 5 *Mod.* 101. To these ends there must be a sale of the real property. Where a testator directed that his real and personal estate be sold and divided amongst his sisters, a power to the executors to sell the real estate was implied. *Tylden* v. *Hyde*, 2 *S. & S.* 238. The better opinion at present seems to be, says Judge Redfield, that the mere fact that the avails of real estate, after it is converted into money, is directed to go in such a direction that it will have to pass through the hands of the executor in the form of money, will, by implication, give a power of sale. 2 *Redf.*

Haggerty v. Lanterman.

*on Wills* 124.   See, also, *Dewey* v. *Ruggles*, 10 *C. E. Gr.*
35, and *Whitehead* v. *Wilson*, 2 *Stew.* 396; *Theobald on Wills*
234–238; 1 *Wms. on Ex'rs* 655; *Going* v. *Emery*, 16 *Pick.* 107.
If the executor is directed by the will, or bound by law, to
see to the application of the proceeds of the sale, or if the
proceeds in the disposition of them are mixed up and
blended with the personalty which it is the duty of the
executor to dispose of and pay over, then a power of sale is
conferred on the executor by implication.   *Lippincott's ex'r*
v. *Lippincott*, 4 *C. E. Gr.* 121, 122.   But there is direct evi-
dence in this will of the intention of the testator to give to
his executor power to sell his real estate.   The language of
the concluding clause of the last section, above quoted, dis-
tinctly indicates that intention.   The testator there expresses
his desire that the executor consult with the testator's other
children as to the expediency of selling the homestead prop-
erty.   He desires to respect their wishes on that subject,
but the power to sell is not dependent on their consent.   He
did not intend that the power of sale should be clogged by
the necessity of obtaining the consent of all his children.
In fact (it may be remarked), all of them except Euphemia
are desirous that the executor should sell the property.

There is still another consideration which may be added.
The testator's personal estate, if the amounts due to him
from his sons be not included (and some of his sons are
unable to pay those debts except out of their shares of his
estate), is insufficient to pay his debts.   He evidently
intended that the debts due him from his sons should be
paid by the sons in the distribution of his estate to them
under his will, and he intended that his executor should
have power to sell his real estate, and that he should do so,
unless some arrangement should be made among his chil-
dren which should render a sale unnecessary.

The language of Chief Justice Shaw, in *Going* v. *Emery*,
above cited, is applicable to the will under consideration:
" The will is certainly very inartificially drawn, but this cir-
cumstance is never held to affect the validity of a will when

the meaning of any particular clause, expounded by a consideration of all other parts of the will, can be ascertained with reasonable accuracy. The rule then applies that if a testator, having a right to dispose of his real estate, directs that to be done by his executor which necessarily implies that the estate is first to be sold, a power is given by this implication to the executor to make such sale and execute the requisite deeds of conveyance."